IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GRANADA APARTMENT HOLDINGS, LLC, a Delaware Limited Liability Company, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 18-16 Erie |
| v. | ) ) | |
| MICHAEL L. JOSEPH, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

District Judge Susan Paradise Baxter

Pending before the Court in this civil action is a motion (ECF No. 9) by Defendant Michael L. Joseph ("Joseph") to dismiss the complaint filed by Granada Apartment Holdings, LLC ("GAH") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). For the reasons that follow, Joseph's motion will be denied.

### I. Factual and Procedural Background

On or about February 28, 2007, LaSalle Bank National Association ("LaSalle") issued a commercial mortgage loan (the "Loan") in the principal amount of $19.2 million to Granada Apartments, L.P ("Granada LP"), a New York limited partnership. Compl. ¶5 (ECF No. 1-1). Granada LP's general partner is MLJ Granada, Inc. ("MLJ Granada"), a New York corporation. Compl. ¶7; Compl. Ex. A at 15 (ECF No. 1-1). MLJ Granada's president is Joseph, a Colorado domiciliary. *See* Decl. of Michael Joseph at ¶3 (ECF No. 9-2); Compl. Ex. A at 15. At all times relevant to this litigation, Joseph held a direct or indirect ownership interest in Granada LP and derived substantial benefit from the Loan. Compl. ¶6; Compl. Ex. C at 1.

1

LaSalle's loan to Granada LP was secured by a mortgage, security agreement, and fixture filing that related to Granada LP's property interests in, among other things, certain real estate and improvements located at 1717 Kuntz Road in Millcreek Township, Erie County, Pennsylvania (the "Property"). Compl. ¶¶7-8.; Compl. Ex. B (ECF No. 1-1). The Property comprises the Granada Apartments, which includes approximately 35 separate buildings. Compl. ¶16.

As a condition of the Loan, Joseph executed a guaranty (the "Guaranty"), which stated:

> Guarantor irrevocably and unconditionally guarantees to Lender (and its successors and assigns), jointly and severally, the payment of the Guaranteed Obligations as and when the same shall be due and payable . . . . Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable, jointly and severally, for the guaranteed Obligations as a primary obligor, and that each Guarantor shall fully perform, jointly and severally, each and every term and provision hereof.

Compl. Ex. C at §1.1 (ECF No. 1-1). Section 1.2 of the Guaranty defined "Guaranteed Obligations" to include "any and all loss . . . arising out of or in connection with . . . any waste of the Property caused by act(s) or omission(s) of Borrower, its agents, affiliates, officers and employees." *Id.* §1.2. Section 1.5 of the Guaranty included an acceleration clause, which stated that: "If all or any part of the Guaranteed Obligations shall not be punctually paid when due, . . . Guarantor shall, immediately upon demand by Lender, . . . pay. . . the amount due on the Guaranteed Obligation . . . ." *Id.* §1.5.

The Loan was also evidenced by a promissory note that was signed on behalf of Granada LP by Joseph, acting in his capacity as MLJ Granada's president. Compl. ¶7; Compl. Ex. A at 15 (ECF No. 1-1). Section 11(i) of the note stated that "[Granada LP] and each Guarantor, jointly and severally, shall be personally liable for all losses, liabilities, damages, costs, expenses and claims including, without limitation, attorneys' fees and expenses incurred by or suffered by

2

Lender as a result of," *inter alia,* "any waste of the Property caused by act(s) or omission(s) of Borrower, its agents, affiliates, officers and employees." Compl. ¶9; Compl. Ex. A at §11(i).

On December 21, 2016, a receiver was appointed for the Property in connection with a mortgage foreclosure action in the United States District Court for the Western District of Pennsylvania, *U.S. Bank Nat'l Ass'n, as Trustee v. Granada Apartments, L.P.*, Civil Action No. 1:16-cv-227 (W.D. Pa.). Compl. ¶17. GAH claims that, during the time period between the issuance of the Loan and the appointment of the receiver, the Property sustained progressive and material waste as the result of acts or omissions on the part of Granada LP and its agents, affiliates, officer and/or employees. *Id.* This allegedly included, among other things, substantial issues with roofs, parking lots, water intrusion, mold, deck structures, windows and HVAC systems. *Id.* ¶18. It culminated with the June 2017 collapse of a balcony at one of the buildings, which injured four people. *Id.* ¶19.

In the wake of the balcony collapse, Millcreek Township officials conducted a thorough inspection of the Property, which resulted in five buildings being condemned and Granada LP being cited for hundreds of fire code and property maintenance violations. Compl. ¶20. The Township subsequently ordered the demolition of one of the condemned buildings on the ground that structural damage had rendered it "an imminent collapse hazard." *Id.* ¶21; Compl. Ex. D (ECF No. 1-1).

GAH is the successor in interest to LaSalle and is the current holder of the Loan documents, including the note, the mortgage, and the Guaranty. Compl. ¶10. GAH claims that the waste that has occurred to the Property has resulted in damages exceeding $8.5 million. *Id.* ¶22. These damages allegedly include, among other things, costs that have been incurred to

repair and/or replace the building components impacted by the waste, the costs and expenses of suit, and diminution in the value of the Property. *Id.* ¶23.

By letter dated October 2, 2017, GAH made a written demand upon Granada LP and Joseph for payment of the estimated costs to repair and/or replace the building components impacted by Granada LP's alleged waste. Compl. ¶23; Compl. Ex. E (ECF No. 1-1). GAH maintains that, to date, Joseph has failed or refused to make any payment. Compl. ¶25.

On November 14, 2017, GAH commenced this action with the filing of a complaint in the Court of Common Pleas for Erie County. Doc. 1 ¶¶1-2. The complaint states a single cause of action against Joseph for alleged breach of contractual obligations under the Guaranty. Compl. ¶¶26-33.

On December 27, 2017, Joseph accepted service of the complaint through his counsel. Joseph was not served with process in Pennsylvania. Doc. 9 ¶2; Doc. 9-2 at ¶5. He removed the instant action to this judicial district on January 15, 2018. Doc. 1. The case was initially assigned to the Honorable Cathy Bissoon.

Thereafter, Joseph filed the pending motion to dismiss the complaint pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure. Doc. Nos. 9 and 10. The motion has since been fully briefed and is ripe for adjudication. ECF Nos. 17, 18 and 19.

On September 18, 2018, this civil action was transferred to the undersigned. ECF No. 22. The Court's ruling on the pending motion follows.

**II.    Defendant's Motion to Dismiss Under Rule 12(b)(2)**

   A. *Standard of Review*

When a defendant asserts a motion to dismiss for lack of personal jurisdiction, it becomes the plaintiff's burden to adduce facts that establish personal jurisdiction. *Fatouros v. Lambrakis*,

4

627 F. App'x 84, 86–87 (3d Cir. 2015); *Metcalfe v. Renaissance Marine, Inc*., 566 F.3d 324, 330 (3d Cir. 2009). If the court does not hold an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction. *Fatouros,* 627 F. App'x at 86–87*; D'Jamoos v. Pilatus Aircraft Ltd*., 566 F.3d 94, 102 (3d Cir. 2009). In determining whether the plaintiff has made out its prima facie case, the court is required to accept the plaintiff's allegations as true and construe any disputed facts in the plaintiff's favor. *Fatouros,* 627 F. App'x at 86–87*; Metcalfe*, 566 F.3d at 330.

### B. Legal Analysis

Federal Rule of Civil Procedure 4(k) authorizes a federal district court to exercise personal jurisdiction in accordance with the law of the state where it sits. *See* Fed. R. Civ. P. 4(k)(1); *O'Connor v. Sandy Lane Hotel Co*., 496 F.3d 312, 316 (3d Cir. 2007). Under Pennsylvania law, a court may exercise general personal jurisdiction over an individual defendant if the individual: (i) is present within in the Commonwealth at the time process is served; (ii) is domiciled in the Commonwealth at the time of service of process, or (iii) consents to the exercise of personal jurisdiction, but only "to the extent authorized by the consent." 42 Pa. Cons. Stat. Ann. §5301(1)(i)-(iii). Specific personal jurisdiction over a nonresident defendant is permitted "to the fullest extent allowed under the Constitution of the United States" and "based on the most minimum contact with this Commonwealth allowed under the Constitution." 42 Pa. Cons. Stat. Ann. § 5322(b); see *Ackourey v. Sonellas Custom Tailors*, 573 F. App'x 208, 211 (3d Cir. 2014).

Here, GAH asserts the existence of both general and specific personal jurisdiction. Because the Court agrees that specific personal jurisdiction is present, it need not address GAH's theory regarding general personal jurisdiction.

5

Specific personal jurisdiction applies when the suit arises out of or relates to the defendant's contacts with the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n. 8 (1984)) (internal alterations omitted). As noted, Pennsylvania's "longarm" statute permits Pennsylvania courts to exercise personal jurisdiction "to the fullest extent allowed under the Constitution of the United States" and "based on the most minimum contact with this Commonwealth allowed under the Constitution." 42 Pa. Cons. Stat. Ann. §5322(b). The Due Process Clause permits the exercise of personal jurisdiction when there are sufficient "minimum contacts" between a non-resident defendant and the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In determining whether there are sufficient minimum contacts, the court must determine whether the defendant "purposefully directed" his activities at residents in the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), or whether there was "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe*, 326 U.S. at 319). To be constitutionally sufficient, the defendant's contacts must not be "random, fortuitous or attenuated." *Burger King,* 471 U.S. at 475 n.18.

The Third Circuit Court of Appeals has condensed the jurisdictional analysis into a single test: first, the defendant must have purposefully directed its activities at the forum; second, the litigation must arise out of or relate to at least one of those activities; finally, if the prior two requirements are satisfied, the court may consider whether the assertion of jurisdiction otherwise

comports with traditional notions of fair play and substantial justice. *See O'Connor,* 496 F.3d at 317. The analysis demands a "highly realistic" approach, *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1224 (3d Cir. 1992), that takes into account the relationship among the forum, the defendant, and the litigation. *See Frontier Ins. Co. v. Nat'l Signal Corp.,* No. CIV. A. 98-4265, 1998 WL 778333, at *2 (E.D. Pa. Nov. 9, 1998) (citing *Mellon Bank,* 960 F.2d at 1221). "In a contract case, the court examines the terms of the contract, prior negotiations, anticipated future consequences, and the parties' actual course of dealing. *Id.* (citing *Mellon Bank,* 960 F.2d at 1224).

In this case, Joseph contends that he lacks sufficient minimum contacts with Pennsylvania because: (a) he is a resident of Colorado; (b) the Guaranty upon which GAH is suing was executed in the state of New York in favor of LaSalle, an Illinois bank; (c) neither the contractual negotiations nor the alleged breach occurred in Pennsylvania; (d) the Guaranty provides for jurisdiction in a state or federal court located in Chicago; and (e) the Guaranty was executed in connection with a note and mortgage originally extended by LaSalle to Granada LP, a New York limited partnership. Doc. 9 at ¶¶4, 6, 12-15. According to Joseph, "[t]he Complaint fails to allege any allegations which satisfy one or more provisions of the Pennsylvania long arm statute, 42 Pa. C.S.A. §5322." *Id.* ¶11.

It is clear from the complaint that Joseph is being sued in his personal capacity as the guarantor for Granada LP. The United States Court of Appeals for the Third Circuit has recognized that "[t]here are no general rules governing whether or not guarantors of contractual obligations fall within the constitutional power of the courts of a particular forum." *Mellon Bank,* 960 F.2d at 1226. Thus, "questions of personal jurisdiction" in a case such as this "do not

7

lend themselves to categorical determinations," *id.*, and must instead be resolved on an individualized basis.

That said, our Court of Appeals has also observed that "[s]ome courts, when faced with suits against guarantors in a distant forum, have found significance in the guarantor's financial stake in the enterprise that was the beneficiary of the guaranty." *Mellon Bank,* 960 F.2d at 1225 n.4 (citing *Bond Leather Co. v. Q.T. Shoe Mfg. Co.*, 764 F.2d 928 (1st Cir.1985); *Marathon Metallic Building Co. v. Mountain Empire Constr. Co.*, 653 F.2d 921 (5th Cir.1981)). "Others have looked to whether the guarantor was an active or passive investor." *Id.* (citing *Arkansas Rice Growers Coop. Ass'n v. Alchemy Indus., Inc.*, 797 F.2d 565 (8th Cir.1986)).

In *National Can Corporation v. K Beverage Company,* 674 F.2d 1134 (6th Cr. 1982), the United States Court of Appeals for the Sixth Circuit addressed the issue of personal jurisdiction in the context of a "naked minimum contacts case" involving a foreign guarantor. 674 F.2d at 1137. The relevant defendant (Joanne Thompson) was a resident of North Dakota, and her husband owned stock in a closely-held Kentucky soft drink company. Although Mrs. Thompson did not personally own any stock in the Kentucky corporation and had "never set foot" in that state, 674 F.2d at 1137, she *had* executed a personal guaranty on the corporation's behalf and mailed the document to the corporation's bottle supplier in Illinois for the purpose of guaranteeing any of the corporation's unpaid debt. Mrs. Thompson was later sued in a Kentucky district court, where the claims against her were initially dismissed for lack of personal jurisdiction. On appeal, the Sixth Circuit Court of Appeals reversed the dismissal. The court reasoned that, by signing the guaranty agreement, Mrs. Thompson had "risked [her] name[ ] and financial worth to aid in the establishment of a Kentucky venture in which [s]he had a property interest" by virtue of Kentucky marital property laws. 674 F.2d at 1137. "The fact that [Mrs.

8

Thompson was] not [a] named shareholder[ ]" did not, in the court's view, "negate a proprietary concern in the success of [the Kentucky company]." *Id.* Accordingly, the court held that "the guaranties, when signed by a person with an economic interest in the corporation, furnished the necessary minimum contacts." *Id.*

Courts within this circuit have arrived at similar results, following the logic of *National Can.* In *Frontier Insurance Company v. National Signal Corporation,* No. Civ. A. 98-4265, 1998 WL 778333 (E.D. Pa. Nov. 9, 1998), one of the defendants -- National Signal -- was a Michigan corporation that had contracted with a railroad company to design, refurbish, and construct several railroad grade crossing signals located in Pennsylvania. The plaintiff, Frontier Insurance, was a New York corporation, which had issued a performance and payment bond as security for National Signal's work. Also named as defendants were Joseph and Kimberly Banasiak, both of whom were Michigan domiciliaries who held ownership interests in National Signal and served as its officers and directors. As an inducement for Frontier Insurance to issue the performance and payment bond, all three defendants had signed an indemnity agreement pursuant to which they agreed to indemnify Frontier Insurance against any claims, demands, payments or judgments that the latter might incur as a result of having bonded the Pennsylvania construction work. *See* 1998 WL 778333, at *1. After Frontier Insurance rendered payments to National Signal's equipment suppliers for certain debts, Frontier sued National Signal and the Banasiaks for reimbursement under the terms of the indemnity agreement. *Id.*

In passing on the issue of personal jurisdiction, the court in *Frontier Insurance* held that the individual defendants had sufficient contacts with Pennsylvania separate and apart from their roles as officers of National Signal. 1998 WL 778333, at *3. The court reasoned:

> Both Joseph and Kimberly Banasiak signed, in their individual capacities, the Agreement that is the subject of this lawsuit. By that contract, the Banasiaks agreed

9

> to indemnify Frontier for any loss incurred on the performance and payment bonds
> that guaranteed National's construction work in Pennsylvania. (Compl. ¶¶ 11–15).
> In effect, the Banasiaks stepped into Frontier's shoes and themselves guaranteed the
> Pennsylvania construction work performed by National. Serving as a guarantor
> may amount to minimum contacts where, as in the instant case, the guarantor has a
> financial interest in the business or person whose obligation it guarantees. *See Hale
> v. MRM Trucking, Inc*., No. 90–6072, 1991 WL 114829, *2 (E.D. Pa. 1991) (citing
> *Koff v. Brighton Pharm., Inc*., 709 F. Supp. 520, 526 (D.N.J.1988)).

*Id.* The court also found it significant that performance of the indemnity agreement was "centered in Pennsylvania." *Id.* at *4. The court explained:

> Frontier entered the Agreement with the Banasiaks as security for issuing the
> performance bonds, which bonds in turn were necessary to enable National to
> contract to perform the railroad construction work in Pennsylvania. Absent that
> connection with Pennsylvania, neither party would have entered the Agreement.
> Performance of the Agreement turned on the execution and completion of the
> bonded work in Pennsylvania and on Frontier's paying on the bond obligations in
> Pennsylvania. Frontier brought this lawsuit to recover for payments under the
> Agreement and expenses that it had incurred in Pennsylvania. The Banasiaks argue
> that the contract was not signed or breached in Pennsylvania. . . . However, the
> question of breach or performance relates to Pennsylvania-focused events. This
> relationship among Pennsylvania, the parties, and their contract makes it reasonable
> for the Banasiaks to have anticipated being haled into court in Pennsylvania in a
> dispute over the indemnity Agreement.

*Id.* (citing Burger King, 471 U.S. at 474).

Similarly, in *Great American Insurance Company v. Stephens,* No. Civ. A. 04-3642, 2005 WL 452349 (E.D. Pa. Feb. 25, 2005), the court followed the principle, applied in both *National Can* and *Frontier Insurance*, that "'[s]erving as a guarantor may amount to minimum contacts where . . . the guarantor has a financial interest in the business or person whose obligation it guarantees.'" 2005 WL 452349, at *4 (quoting *Frontier Insurance Co.,* 1998 WL 778333, at *3) (alteration and ellipsis in the original). In *Great American Insurance Company,* the court held that Alabama residents were subject to personal jurisdiction in Pennsylvania based on their status as indemnitors to an Ohio company that had issued a performance on a

Pennsylvania construction project. In finding the necessary minimum contacts, the court observed that:

> [the defendants] voluntarily signed the Indemnity Agreement while fully aware that it related to a performance bond for construction of a project in Pennsylvania. Their economic interest in the transaction was apparent in that their signatures of [sic] the Indemnity Agreement were demanded and received. As in *Frontier*, the question of breach or performance relates to Pennsylvania-focused events. While their contacts with Pennsylvania may be fewer than those of their husbands, their signatures on the Indemnity Agreement are sufficient to demonstrate that [they] "purposefully directed [their] activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities."

2005 WL 452349, at *5 (quoting *Burger King*, 471 U.S. at 472).

The Court finds these cases instructive and further concludes that they counsel in favor of a finding of specific personal jurisdiction here. In this case, Granada LP accepted a commercial mortgage loan from GAH's predecessor-in-interest for the purpose of investing in a commercial real estate venture located in Pennsylvania – namely, the Granada Apartments. That apartment complex, and the land upon which it is situated, served as the primary source of collateral that secured the Loan. *See generally,* Compl. Exs. A, B, and C (ECF No. 1-1). The corresponding mortgage, security agreement, and fixture filing imposed obligations on Granada LP concerning maintenance and upkeep of the subject Property. *See* Compl. Ex. B, ¶6 (ECF No. 1-1 at 35). The losses that now form the basis of GAH's monetary claim arose from Granada LP's alleged breach of its duty to maintain the Pennsylvania Property. Critically, Joseph served as president of Granada LP's general partner, MLJ Granada (which bears Joseph's initials), and, at all times relevant to this lawsuit, he held an ownership interest in Granada LP. Because of this ownership interest, Joseph was in a position to benefit financially from the underlying Loan and related real estate venture. Furthermore, Joseph's personal guaranty of Granada LP's payment obligations served as an inducement for the Loan, and was also a necessary precondition thereof. *See* ECF No. 1-1 at 74. Based on these facts, the Court finds that Joseph purposely availed himself of the

privilege of conducting activities within this Commonwealth, and thereby invoked the benefits and protections of its laws. *Burger King*, 471 U.S. at 474–75; *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Consequently, Joseph has sufficient contacts with this forum such that he should reasonably have expected to be "haled" into a Pennsylvania court if sued for events arising out of his activities here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Because GAH has established a prima facie case for exercising specific personal jurisdiction, it becomes Joseph's burden to "present a compelling case" that the Court's assertion of jurisdiction would be unreasonable. *Mellon Bank,* 960 F.2d at 1226. Among the factors to be considered are: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id*. at 1222 (quoting *Burger King*, 471 U.S. at 477). "[T]his second tier of analysis is discretionary with the court." *Id*.

Although Joseph disputes the existence of sufficient minimum contacts, he has made no attempt to demonstrate that the exercise of personal jurisdiction would be unreasonable based on the factors listed above. Accordingly, the Court finds no basis for concluding that its assertion of jurisdiction over Joseph would violate traditional notions of fair play and substantial justice. *See Mellon Bank*, 960 F.2d at 1227 ("Because the defendants bear the burden of showing the unreasonableness of an otherwise constitutional assertion of jurisdiction, and because they have failed to raise the issue in this court, we conclude that this is not an 'appropriate case' in which to consider the other factors bearing on 'fair play and substantial justice.'"). For the reasons stated herein, Joseph's motion to dismiss under Rule 12(b)(2) will be denied.

### III. Defendant's Motion to Dismiss Under Rule 12(b)(3)

#### A. *Standard of Review*

Joseph alternatively moves for dismissal under Federal Rule of Civil Procedure 12(b)(3), which applies when the chosen venue is improper. In ruling on a Rule 12(b)(3) motion, "[a]ll well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits." *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1352, at 324 (3d ed. 2004)). It is the defendant's burden to show that venue is improper. *Id*. at 160.

"In federal court, venue questions are governed either by 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). Section 1406 "applies where the original venue is improper and provides for either transfer or dismissal of the case." *Id*. Section 1404(a) "provides for the transfer of a case where both the original and the requested venue are proper." *Id*. Here, Joseph invokes only §1406, as he contends that venue does not lie in this Court.

#### B. *Legal Analysis*

In cases predicated on diversity jurisdiction, proper venue lies in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or

(3) if there is no district in which the action may otherwise be brought as provided by this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. §1391(a).[1] Here, the parties agree that only subsection (2) is potentially applicable.

Joseph maintains that Section 1391(a)(2) fails to provide a basis for venue. To that end, he cites *Bro-Tech Corp. v. Purity Water Co. of San Antonio*, No. CIV. A. 08-371, 2008 WL 1757922 (E.D. Pa. Apr. 16, 2008), for the proposition that contract negotiation, execution, performance, and breach are the relevant "events" giving rise to a breach of contract claim. *See id.* at *2 ("In determining whether a substantial part of the events or omissions giving rise to a contract claim occurred in the district, courts consider: where the contract was negotiated or executed; where it was performed; and where breach occurred.") (citing 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3806.1 (3d ed. 2004)). Joseph insists that, because the contractual negotiations, the execution of the Guaranty, and Granada's alleged nonpayment all occurred outside of this Commonwealth, it cannot be said that a substantial part of the events or omissions giving rise to the claim occurred here.

Joseph further argues that the "property" at issue in this case is a contractual right and, therefore, it cannot be said that "a substantial part of the property that is the subject of the action" is situated in Pennsylvania. In support of his argument, Joseph relies on *MTGLQ Investors, L.P.*

---

[1] The Court notes that, pursuant to Section 5.3 of the Guaranty, Joseph irrevocably submitted to the jurisdiction of "any court of competent jurisdiction located in the City of Chicago and State of Illinois" in connection with "any proceeding arising out of or relating to this Guaranty." Compl. Ex. C at §5.3 (ECF No. 1-1 at 84). To the extent that Section 5.3 is reasonably construed as a forum selection clause, the parties appear to agree that it is permissible rather than mandatory. *See Agri-Marketing, Inc. v. ProTerra Solutions, LLC*, No. 5:17-CV-00627, 2018 WL 1444167, at *3 (E.D. Pa. Mar. 22, 2018) ("A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere, whereas a mandatory clause dictates an exclusive forum for litigation under the contract."). Notably, the clause does not contain mandatory language such as "must" or "shall," nor does it provide that Chicago is the exclusive venue for contractual disputes. Joseph has expressly conceded that the clause is permissive by arguing that proper venue would lie in other venues – namely, the District of Colorado (where he is domiciled) or the Western District of New York (where Joseph negotiated and executed the Guaranty). GAH has implicitly conceded the point by filing suit in this forum.

Under the law of this circuit, a forum selection provision is not enforceable unless it is mandatory. *See Wall St. Aubrey Golf, LLC v. Aubrey,* 189 F. App'x 82, 85 (3d Cir. 2006) (court noting that, "before a contractual forum selection provision can be enforced, it must actually effectuate a selection"); *Nitterhouse Concrete Prod., Inc. v. Dobco Grp., Inc*., 305 F. Supp. 3d 580, 587 (D.N.J. 2018) ("A forum selection clause is enforceable only if it is mandatory. . . ."). Accordingly, GAH was not prohibited from filing suit in this forum so long as venue is properly laid here.

14

*v. Guire*, 286 F. Supp. 2d 561 (D. Md. 2003). That case involved five West Virginia limited liability companies ("LLCs") that obtained a loan from a California lender for the purpose of purchasing three Ponderosa restaurants, one of which was located in Maryland and the other two of which were located in West Virginia. As part of the loan transaction, the LLCs executed three promissory notes, each note being secured by a deed of trust to one of the three restaurant properties. One of the LLCs' members, Jerry Guire – who was also a West Virginia resident – executed the notes on behalf of the LLCs and also personally guaranteed them. At some point, the lender assigned its interest in the notes to MTGLQ, a Delaware limited partnership with a New York business address. After the LLCs defaulted on their payment obligations, MTGLQ sued the five LLCs and Guire in a Maryland federal district court. The court ruled that venue was improper and transferred the litigation to the United States District Court for the Northern District of West Virginia, where four of the five LLCs had filed for bankruptcy. In doing so, the court concluded that a "substantial part of the events or omissions giving rise to the claim" did not occur in Maryland, since there was no evidence that either (1) the negotiation, formation, and execution of the secured promissory notes or (2) the defendants' default on their obligations had occurred in Maryland. 286 F. Supp. 2d at 564. The court further concluded that the "property that is the subject of the action" was the loan itself, not the property securing it, and the promissory notes embodying that loan were "not to be found in Maryland." *Id.* Although one of the three restaurants that secured the notes was located in Maryland, the court found this insufficient to establish proper venue in that judicial district. Certain events that had occurred in Maryland relative to that particular restaurant – such as defendants' actions in acquiring the property, securing the loan with it, filing the agreement in Maryland, and mismanaging the business – were only "tangentially" related to the claim and did not technically give rise to it,

according to the court, because MTGLQ could establish the critical elements of its claim without reference to those events. *Id.* at 564-65.

Having reviewed and given due consideration to the foregoing decisions, the Court is not persuaded that they counsel against a finding that venue is proper here. In this case, unlike in *Bro-Tech* or *MTGLQ Investors,* GAH's breach of contract claim is not predicated merely on the Defendant's failure to make payments pursuant to a loan agreement or purchase contract; rather, the claim is specifically predicated upon Joseph's failure to indemnify a loss that is that is directly tied to the Pennsylvania Property. To that end, the complaint alleges the following: (i) Joseph guaranteed to GAH the payment of "any and all loss, liability, damage, cost, expense, claim or other obligation" arising out of or in connection with "any waste of the Property" that was caused by Granada LP or its agents, affiliates, officers and employees; (ii) Joseph's obligation to cover these losses arose upon demand by GAH if Granada LP did not first pay them when they became due; (iii) during the term of the Loan, the Property sustained progressive, material waste that was caused by Granada LP or its agents, affiliates, officers and/or employees; (iv) this waste caused damage to GAH; (v) Joseph breached his obligation to make payments, despite GAH's written demand; and (vi) GAH has suffered damages in excess of $8.5 million as a result of Joseph's breach of his contractual obligations. Compl. ¶¶28-33. No other contractual breach has been alleged on the part of Joseph aside from the foregoing. Based on the allegations in the complaint, the presence of waste to the Property is a condition precedent to Joseph's contractual obligation to indemnify GAH, and the degree of that waste is material to GAH's calculation of damages. Consequently, the events that occurred in Pennsylvania are not merely "tangential" to GAH's breach of contract claim; instead, they give rise to it. This makes the instant case materially distinguishable from *MTGLQ,* wherein the court observed that "no . . .

16

questions about the management or disposition of the [forum] property [bore] directly on the plaintiff's claim." 286 F. Supp. 2d at 566. *Cf. LaSalle Bus. Credit, LLC v. Oxenberg,* Civil Action No. 05-5849, 2006 WL 2034819, at *5 (E.D. Pa. July 18, 2006) (holding that venue was proper in the Eastern District of Pennsylvania with respect to claims alleging the defendant's breach of three guaranty agreements; although the loan recipients and their guarantor were all based in Florida, the loans at issue were used to support business operations in Bucks County, the mortgage between the lender and one of the Florida entities was secured by real property located in Bucks County, and another loan was used to maintain the Bucks County property); *Frontier Ins. Co.,* 1998 WL 778333, at *5 (holding that venue was proper in the Eastern District of Pennsylvania because the subject indemnity agreement "turned on [the] execution and completion of the bonded railroad construction work and the payment on the performance bond, both of which occurred in Pennsylvania, making the individual defendants "effective guarantors of National's construction work in Pennsylvania").

In sum, Joseph has not met his burden of demonstrating that this judicial district is an improper venue for the instant litigation. Accordingly, the Court will deny Joseph's request for a dismissal of this action or a transfer pursuant to 28 U.S.C. §1406.

### IV. Conclusion

Based upon the foregoing reasons, Joseph's motion to dismiss the complaint (ECF No. 9) will be denied. An appropriate order follows.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States District Judge

Dated: February 20, 2019